IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

UNITED STATES OF AMERICA, *ex*          *
*rel.* REBECCA HOCKADAY and STATE
OF GEORGIA, *ex rel.* REBECCA          *
HOCKADAY,
                                       *
     Plaintiff-Relator,
                                       *          CASE NO. 3:15-CV-122 (CDL)
vs.
                                       *
ATHENS ORTHOPEDIC CLINIC, P.A.,        *
*et al.*,
                                       *
     Defendants.                       *

_____

O R D E R

     The Court is called upon yet again to resolve discovery

disputes in this contentious action.  The Court finds counsel

for both parties blameworthy for their inability to resolve

their differences in good faith, although it is admittedly

difficult to calculate the relative degrees of fault.  What is

clear to the Court is that the lawyers have utterly failed to

evaluate their positions in light of the directive of Rule 26

that discovery of relevant nonprivileged evidence shall be

permitted to the extent that it is proportional to the needs of

the case.  Fed. R. Civ. P. 26(b)(1).  And they certainly have

not adequately evaluated their disagreements in light of the

factors to be considered under Rule 26:  the importance of the

issues at stake, the amount in controversy in the action, the

parties' relative access to the relevant information, the parties' resources, the importance of the discovery, and whether the burden or expense of production likely outweighs its likely benefit. *Id.* Remarkably, counsel appears to have abandoned any notion of achieving a just determination of this action in a *speedy and inexpensive* manner as contemplated by the very first rule of federal civil procedure. Fed. R. Civ. P. 1. Instead, Defendants' counsel is firmly convinced that Relator's counsel's requests are unreasonable, and Relator's counsel believes that Defendants' counsel is trying to hide the ball and make it unreasonably difficult for Relator to prove her claims. Given this complete breakdown, the Court has a duty to make the decisions which the rules contemplate should be made by counsel. Like a parent deciding which stubborn child should get the last cookie, the Court is tempted to split the cookie in half. Although alluring in its simplicity, such a resolution would likely not be entirely just. The Court must therefore dive into the middle of the dispute, a task for which it is less well equipped than theoretical good faith counsel who know the case better and should have stronger incentives for compromise. Yet, this is sometimes how the cookie crumbles. So after considerable expenditure of judicial resources, the Court explains in the remainder of this order its resolution of the

pending motions and provides notice to counsel that any whining should be reserved for the Court of Appeals.

Relator is the former chief operating officer of Athens Orthopedic Clinic, P.A. ("Clinic"). Relator was terminated in 2014 and filed this *qui tam* action in 2015, alleging that Defendants submitted false claims to the United States and Georgia in violation of the False Claims Act, 3 U.S.C. §§ 3729-3733, and the Georgia Medicaid False Claims Act, O.C.G.A. §§ 49-4-168 to 168.6. Relator asserts that the Clinic and its doctors and administrators concocted a variety of schemes to defraud the United States and Georgia by submitting false claims for Medicare and Medicaid reimbursement. The United States and Georgia declined to intervene in late 2018, Relator filed an amended complaint, and discovery began in early 2019. Discovery got off to a rocky start, and the Court has held one hearing and two telephone conferences regarding the parties' discovery disputes. At the last telephone conference on February 25, 2020, the Court expressed hope that this case would be back on track and that it would not have to spend more time on discovery disputes. But counsel have been incapable of resolving their disputes on their own by conferring in good faith. Instead, they have filed thirteen discovery motions with hundreds of pages of briefing.

DISCUSSION

I.  **Relator's Motion for Sanctions (ECF No. 118)**

At the February 25, 2020 telephone conference, the Court ordered the Clinic to respond to Relator's outstanding discovery requests by March 31, 2020, with no further extensions.  Then the COVID-19 pandemic hit.  The parties jointly requested and received a four-month extension of discovery, to April 9, 2021. The joint motion for extension, however, did not address the documents that the Clinic was to produce by March 31, 2020.  The Clinic did not complete its production by that date.  Relator filed a motion for sanctions, arguing that the Court should hold the Clinic in contempt until it produces all the documents that the Clinic was ordered to produce by the end of March.  The Clinic represents that it met the March 31 deadline for nearly all the responsive documents that had been identified for production as of February 25, 2020 and that it produced the remaining documents by May 5, 2020.  The Clinic further represents that it discovered additional responsive documents that it needed to produce and that those documents were on track to be produced by the end of June, 2020.

Given the combative nature of discovery in this action, the wisest course for the Clinic would have been to seek an extension of the March 31 production deadline in light of delays caused by the pandemic.  If such an extension had been sought,

4

the Court very likely would have granted it and ordered the Clinic to complete its production as soon as practicable. Under these circumstances, the Court declines to impose sanctions based on the Clinic's failure to meet the March 31, 2020 production deadline. The motion for sanctions (ECF No. 118) is DENIED.

The Court understands that much of Relator's motion focuses on the issue of board meeting recordings. It was a struggle for Relator to get the Clinic to nail down what recordings exist and what recordings do not. Initially, the Clinic's counsel represented that some of the recordings had been deleted, but the Clinic's corporate representative later testified that some recordings did exist and had been given to the Clinic's counsel. And, shortly before the February 2020 telephone conference, the Clinic's counsel acknowledged that some recordings did exist and told Relator's counsel that they would be produced. Thus, these recordings should have been part of the production that was due by March 31, 2020. They certainly should have been produced, yet it appears that they had not been produced by the time of Relator's reply brief. If the recordings still have not been produced, Relator should alert the Court, and the Court will reconsider the issue of sanctions on this narrow issue.

## II.  The Clinic's Motion for Protective Order Regarding Subpoena to Doctors Management, LLC (ECF No. 122)

The Clinic or its lawyers hired Doctors Management, LLC several times between 2016 and 2019 to assist the Clinic with compliance issues and to help counsel advise the Clinic regarding several matters.  Relator served a subpoena on Doctors Management seeking all documents and communications related to work performed by Doctors Management for the Clinic.  The Clinic filed a motion for a protective order, arguing that the subpoena seeks information covered by the Clinic's attorney-client privilege and work product privilege and that it seeks irrelevant information.

Relator asserts that while Relator's counsel was still trying to confer with the Clinic's counsel via email to resolve the disputes and narrow the scope of the subpoena, the Clinic filed its motion for a protective order.  Relator represents that that the parties had made some progress on their differences, including an agreement that Relator would not insist on production of any document that the Clinic claimed was privileged.  Thus, there is a glimmer of hope that the lawyers can work this one out if they try.  So, try they shall.  But the lawyers' favored process—sending emails and letters labeled as good faith attempts to confer—isn't working.  Instead, the lawyers shall schedule a videoconference at a mutually agreeable

time so that they can discuss the remaining issues and come to an agreement regarding the subpoena.   The present motion for protective order (ECF No. 122) is DENIED.

## III. Relator's Motion to Compel Production of Claims, Claims Related Documents, and Patient Records (ECF No. 123)

At the February 25, 2020 telephone conference, the Court ordered the Clinic to produce documents related to Atlanta Prosthetics & Orthotics within fourteen days (by March 10, 2020) and the rest of the documents responsive to Relator's outstanding discovery requests by March 31, 2020.   Defendants did not dispute that Relator is entitled to claims information "and the claims themselves for relevant patients in this case." Hr'g Tr. 35:14-16, Feb. 25, 2020, ECF No. 114.   Relator contends that the Clinic did not produce the claims by the March 31 deadline—at least not as individual claim forms.   The Clinic asserts that for many years, claims data has been kept in a software system and transmitted to the payors electronically. The Clinic further represents that it exported claims data from its software system into spreadsheets and produced those spreadsheets to Relator.   The Clinic states that it has produced claims data for every claim submitted by the Clinic to a federal healthcare payor from May 2012 through December 31, 2019,[1] as

---

[1] The claims data for claims submitted to federal healthcare payors includes: (1) patient ID number; (2) patient name; (3) service date; (4) location name; (5) place of service; (6) patient subscriber number; (7) insurance plan name; (8) service provider NPI; (9) billing

well as claims data for every claim submitted to any third-party payor during the same time period.[2]   Relator, though, appears to want the claims data on the government claim forms.   The Clinic avers that it worked with its software vendor to attempt a bulk export of claims data into the format of a claim form, but it did not produce a readable result.   A software user can, however, print individual claim forms one at a time.   The Clinic argues that requiring a person to print each individual claim form for hundreds of thousands of claims would be unduly burdensome given that the information has already been produced in a reasonably usable form.

Federal Rule of Civil Procedure 34(b)(2)(E) requires a party producing electronically stored information to produce such information in a form "in which it is ordinarily maintained or in a reasonably useable form," and a party is not required to "produce the same electronically stored information in more than one form."   Fed. R. Civ. P. 34(b)(2)(E)(ii)-(iii).   Here, the

_____

provider NPI; (10) referring provider name; (11) CPT code; (12) modifier 1 modifier 2; (13) charges; (14) payments; (15) adjustments; (16) balance; (17) units; (18) units actual. Defs.' Resp. to Relator's Mot. to Compel 6, ECF No. 136.

[2] The claims data for claims submitted to third-party payor includes: (1) provider ID;; (2) provider name;; (3) location ID;; (4) location name;; (5) patient appointment number;; (6) account ID;; (7) patient name;; (8) patient date of birth;; (9) appointment type ID;; (10) appointment type name (e.g. MRI, follow up visit, etc.);; (11) appointment date;; (12) appointment start time;; (13) appointment duration;; (14) patient complaint; (15) appointment notes;; (16) insurance plan 1;; (17) subscriber number 1; (18) insurance plan 2; (19) subscriber number 2. Defs.' Resp. to Relator's Mot. to Compel 6-7, ECF No. 136.

Clinic represents that it keeps claims data in a software system and that it exported the data into usable spreadsheets and produced those spreadsheets to Relator.  The Court declines to require the Clinic to produce the claims data in another format. The motion to compel (ECF No. 123) is DENIED on this ground.

The Court, however, understands that Relator wants to know how the Clinic accomplished the necessary certification when it electronically transmitted claims data to government payors. The government form that is used for individual claims contains a certification by the entity seeking reimbursement: the entity certifies that the claim complies with all applicable Medicare and Medicaid laws, including the Anti-Kickback Statute and the Stark Law.  Relator contends that it is not clear from the claims data spreadsheets the Clinic produced how such a certification was made when the claims were submitted electronically.  Relator is entitled to that information, and the motion to compel is GRANTED on this ground.  The Clinic shall work with Relator's counsel to ensure that Relator receives evidence regarding the claims certifications by December 31, 2020.

Relator also asserts that the Clinic has not provided adequate proof of claims payment by government payors.  The Clinic represents that payment information is included in the claims data that was exported from its software system.  If

Relator contends that the Clinic still has not provided adequate proof of payment for the claims that were submitted to government payors, Relator's counsel shall confer in good faith with the Clinic's counsel, and the lawyers should find a way to resolve this issue by December 31, 2020.

Relator contends that the Clinic has asserted that data for claims made between 2005 and 2012 has been destroyed. Relator believes, however, that the information does exist in a specific database that the Clinic maintains. The Clinic did not respond to this portion of Relator's motion to compel and does not argue that the records, if they exist, are not discoverable. It is not clear from the present record whether any responsive documents exist. Accordingly, if the Clinic still has not produced claims data for claims made between 2005 and 2012, then the lawyers shall confer in good faith to ensure that Relator receives any data that exists plus information on what data has been destroyed by December 31, 2020.

Finally, the parties are at an impasse regarding patient records. The Clinic maintains that Relator seeks medical records for unspecified patients but has not identified which patients are relevant. Relator would like the patient records for patients whose services resulted in a false claim to the Government under one of the schemes alleged in the First Amended Complaint. In the present motion to compel, Relator focuses on

(1) claims that used a modifier to bill separately for services
that allegedly should have been bundled together, (2) claims
that billed for FDA-approved viscosupplementation when an
unregulated viscosupplementation agent was allegedly used
instead, and (3) claims related to orthotics made by the Atlanta
Prosthetics & Orthotics orthotist.[3]  Relator appears to contend
that the Clinic should figure out whose records she wants, but
the Clinic argues that the onus should be on Relator to identify
the patients for whom she seeks medical records.  The Court
agrees with the Clinic.  Relator shall identify the patients
whose medical records she seeks.  If Relator cannot tell from
the claims data that has already been produced which patients'
medical records are relevant to her claims, then counsel for the
parties shall confer in good faith to find a mutually agreeable
way of resolving this issue.

## IV. The Clinic's Motion for Protective Order Regarding Subpoena to Wicklow Enterprises, LLC (ECF No. 127)

Relator alleges that the Clinic billed the Government for
FDA-approved viscosupplementation (a substance injected into a
patient's joint to alleviate the effects of osteoarthritis) when
the Clinic actually purchased unregulated, foreign
viscosupplementation agents and used them in patients.  Relator

---

[3] In her reply brief, Relator also includes patients that received any
durable medical equipment or orthotics.

claims that the Clinic purchased some viscosupplements from Wicklow Enterprises, LLC.

Relator issued a subpoena to Wicklow Enterprises, seeking documents, communications, and electronically stored information regarding the Clinic's purchase of viscosupplementation agents from Wicklow.  The Clinic filed a motion for a protective order, arguing that the subpoena seeks irrelevant information.  Noting that the Clinic's first transaction with Wicklow was in 2018, the Clinic argues that the Wicklow transactions could not possibly be relevant to this action.  Under the Clinic's reading of the First Amended Complaint, Relator is only alleging that the Clinic had a scheme regarding viscosupplementation agents in 2010.  But more precisely, Relator alleges that the Clinic "shifted to" the "fake" viscosupplementation agents in 2010. Am. Coml. ¶ 202, ECF No. 27.  And, the Amended Complaint, which was filed in October 2018, does not contain any allegations that the Clinic stopped this practice; rather, Relator alleges that the Clinic "kept ordering the cheaper product." *Id.* ¶ 205. Accordingly, the 2018 transactions between the Clinic and Wicklow Enterprises may be relevant, and the Court DENIES the Clinic's motion for a protective order.

The Clinic attached to its motion for protective order a letter outlining Wicklow Enterprises' objections to the subpoena.  To date, though, Wicklow Enterprises has not filed a

motion to quash the subpoena, and the Court therefore does not address the objections raised in the letter.

## V.  Relator's Motion to Compel Discovery on Viscosupplementation (ECF No. 128)

As discussed above, Relator alleges that the Clinic billed the Government for FDA-approved viscosupplementation when the Clinic actually purchased an unregulated, foreign viscosupplementation agent and used it in patients. In Interrogatory No. 7, Relator sought all facts that support or refute these allegations, along with the identity of documents, communications, or persons with knowledge relating to those allegations. In Interrogatory No. 19, Relator sought information regarding the Clinic's purchases of reimported or foreign viscosupplementation agents. And in Request for Production of Documents No. 7, Relator sought documents relating to her viscosupplementation allegations. Relator claims that the Clinic did not adequately respond to Interrogatory No. 7 and did not respond to Interrogatory No. 19 at all. She also contends that the Clinic did not produce documents regarding the purchase of viscosupplements from QP Medical or Wicklow Enterprises and that the Clinic did not produce any claims information for viscosupplements acquired from these companies.

The Clinic contends that it is not required to respond to Interrogatory No. 19 because Relator was only allowed to serve

thirty interrogatories and she served far more than that before serving Interrogatory No. 19. The parties dispute whether Interrogatory No. 16—which consists of thirty-six subparts—should count toward the limit. The Court ordered Relator to amend her interrogatory on spoliation issues "to specifically ask the questions with regard to spoliation that [she] want[s] to know about." Hr'g Tr. 58:4:7, Feb. 25, 2020, ECF No. 114. The Court suggested that approach to save the Clinic from having to put up its 30(b)(6) witnesses for deposition again. *Id.* 57:25-58:3, 58:18-19. The Court finds under these circumstances that the subparts of Interrogatory No. 16 should not be counted toward Relator's total. The Clinic does not argue that Interrogatory No. 19 exceeds the limits if Interrogatory No. 16's subparts are disregarded. Accordingly, the Clinic should answer Interrogatory No. 19.

The Clinic also reiterates its objection that any transactions between the Clinic and Wicklow Enterprises are irrelevant because the Clinic's first transaction with Wicklow Enterprises was in 2018, eight years after the Clinic allegedly "shifted to" the "fake" viscosupplementation agents in 2010. Am. Coml. ¶ 202. The Clinic contends that Relator could not plausibly allege that the Clinic continued this scheme after her employment with the Clinic ended. The Clinic also argues that any information regarding Wicklow Enterprises is irrelevant

simply because Relator did not specifically name Wicklow
Enterprises as a viscosupplementation agent vendor in the
Amended Complaint.  The Court disagrees.  As discussed above,
Relator alleges that only FDA-approved viscosupplementation
agents may legally be provided to patients, that the Clinic
obtained unregulated viscosupplementation agents from outside
the United States, and that the Clinic kept ordering the cheaper
product but billed the Government as though it used the FDA-
approved viscosupplementation agent.[4]   Am. Compl.  ¶¶ 203-205.
Then, Relator asserts that she learned during discovery that
Wicklow Enterprises was a vendor that supplied the Clinic with
foreign viscosupplementation agents.  The Court is not convinced
that it should limit discovery to the term of Relator's
employment or that the Complaint only alleges a one-time
viscosupplementation scheme that ended in 2010.  Rather, the
Amended Complaint alleges that the Clinic kept ordering foreign
viscosupplementation agents and continued improperly billing for
them, and it does not limit the allegations of false claims
regarding viscosupplementation to the time period during which
Relator was employed at the Clinic.  Accordingly, the 2018
transactions between the Clinic and Wicklow Enterprises may be

---

[4] The Clinic contends that its purchase of viscosupplementation agents
from Wicklow Enterprises was not illegal, but there has been no
dispositive motion on this issue and present record does not contain
enough information for the Court to decide the issue.

relevant, and the Clinic thus shall respond to Relator's discovery requests.

The Clinic does not contend that the documents and information about QP Medical are irrelevant. Instead, it contends that it has searched for and produced documents related to QP Medical. Relator contends, however, that the Clinic limited its discovery responses to the year 2010, even though the Amended Complaint alleges a scheme that continued after 2010. Accordingly, if the Clinic did limit its discovery responses to 2010, it should supplement those responses to include a wider date range, up to at least the filing of the First Amended Complaint.

In summary, this motion to compel (ECF No. 128) is GRANTED. The Clinic shall supplement its responses to Interrogatory No. 7, Interrogatory No. 19, and Request for Production of Documents No. 7 by December 31, 2020.

**VI. Relator's Motion to Compel Discovery on Orthotics (ECF No. 129)**

Relator claims that the Clinic had several schemes related to orthotics. One of the alleged schemes involved falsely billing the Government for the services of an unlicensed orthotist. Am. Compl. ¶¶ 43, 234. In another alleged scheme, the Clinic entered kickback relationships with licensed

orthotists, including an orthotist with AP&O.[5]  *Id.* ¶¶ 43, 239,
241.  Relator also alleges that doctors altered diagnoses to
ensure that patients would qualify for Medicare-paid orthotics,
that the Clinic authorized fittings of orthotics by physical
therapists who were not trained or licensed to do so, and that
the Clinic submitted claims for custom orthotic devices when
patients received off-the-shelf items.  *Id.* ¶¶ 235, 240, 242.

In Interrogatory No. 11, Relator sought all facts that
support or refute her orthotics allegations and the identity of
any documents, communications, or persons with knowledge
relating to these allegations.  She also served the Clinic with
Request for Production No. 6, seeking all documents relating to
her orthotics allegations.  And, she propounded Interrogatory
No. 18, seeking details on the Clinic's agreements with third-
party orthotists.  Relator claims that the Clinic did not
adequately respond to these discovery requests.

The Clinic argues that it was not required to respond to
Interrogatory No. 18 because Relator has exceeded the number of
permitted interrogatories.  As discussed above, the Court does
not count the subparts of Interrogatory No. 16 toward Relator's
total.  The Clinic does not argue that Interrogatory No. 18
exceeds the limits if Interrogatory No. 16's subparts are

---

[5] In the Amended Complaint, AP&O stands for "Atlanta Prosthetics and
Orthotics," Am. Compl. ¶ 43, but some of the briefing says that AP&O
stands for "Athens Prosthetics and Orthotics."

disregarded.  Accordingly, the Clinic shall answer Interrogatory No. 18.

Relator contends that the Clinic did not adequately respond to Interrogatory No. 11 in part because the Clinic did not provide a list of persons with knowledge of Relator's orthotics allegations.  Instead, the Clinic referred to its response to Interrogatory No. 1, which is a list of people with knowledge of all the claims.  In its second amended responses to the first interrogatories, the Clinic did identify one doctor, one practice administrator, two former employees, and at least three non-employees who may have information about the orthotics allegations.  Clinic's 2d Suppl. Am. Resp. & Obj. to Relator's 1st Interrogatories, ECF No. 153-1.  Thus, it appears that the supplementation addressed Relator's concerns about the response to Interrogatory No. 11, and the Court declines to order any additional response.

Relator also contends that the Clinic did not adequately respond to the portion of Interrogatory No. 11 that asked the Clinic to identify documents relevant to the orthotics claims. The Clinic relies on Federal Rule of Civil Procedure 33(d). That rule permits a responding party to answer by producing business records, "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."

Fed. R. Civ. P. 33(d)(1).  Although the Clinic represents that it has provided millions of pages of documents in response to Relator's discovery requests, it is not clear from the present record that the Clinic specified the records (or Bates ranges) that must be reviewed to find the information requested in the interrogatories.  Rather, it appears that the Clinic identified six categories of documents that are generally relevant to all of Relator's claims (patient health records in the SRS software program; accounting and financial records in the Peachtree Sage software program; payroll and bonus information in the Paylocity software program; billing information in the CareTracker software program; billing and patient information for ambulatory surgery center patients in the Amkai software program; and hard copy documents regarding accounting, patient records, payroll, bonuses, and billing).

Rule 33(d) requires that the responding party specify the records that must be reviewed; it does not permit a document dump that leaves Relator to guess where she may find the information requested in her interrogatories.  Therefore, if the Clinic has not already provided some type of index to its document production that complies with Rule 33(d) and identifies which documents are responsive to Interrogatory No. 11, it shall do so by December 31, 2020.

Relator argues that the Clinic did not adequately respond to her orthotics document request, Request for Production No. 6, because it did not produce "any claims" or patient records related to patients who received orthotics. Although the Clinic represents that it has produced claims data for every claim submitted by the Clinic to a federal healthcare payor from May 2012 through December 31, 2019, as well as claims data for every claim submitted to any third-party payor during the same time period, Relator contends that orthotics claims data was filtered from that production and had not been produced by mid-July 2020. If the claims data for patients who received orthotics still has not been produced, the Clinic shall produce it by December 4, 2020. And, as discussed above, the Clinic shall work with Relator's counsel to ensure that Relator receives evidence regarding all claims certifications by December 31, 2020. Again, if the Clinic still has not produced claims data for claims made between 2005 and 2012, then the lawyers shall confer in good faith to ensure that Relator receives any data that exists plus information on what data has been destroyed by December 31, 2020.

Relator also seeks patient medical records that she contends are relevant to her orthotics claims. The Clinic seems to take the position that medical records are not relevant to the orthotics claims. One of Relator's allegations is that

doctors altered diagnoses to ensure that patients qualified for
Medicare-paid orthotics.  Another allegation is that the Clinic
billed the Government for orthotics under a doctor's name even
though the doctor did not provide services.  Patient medical
records may be relevant to these allegations and the other
allegations regarding orthotics.  As discussed above, Relator
shall identify the parties whose medical records she seeks.  If
Relator cannot tell from the claims data that has already been
produced which patients' medical records are relevant to her
claims, then counsel for the parties shall confer in good faith
to find a mutually agreeable way of resolving this issue.

In addition to the claims data and medical records, Relator
argues that the Clinic did not adequately search for and produce
non-claims documents that she believes exist and are relevant to
her orthotics claims.  The Clinic responds that it has produced
every document that is responsive to this document request.  It
is impossible for the Court to tell from the present record who
is closer to the truth on this point, but given the other issues
with the Clinic's document production, the Court orders the
Clinic to make one last effort to ensure that it did not omit
from its earlier production any non-claims documents that are
relevant to the orthotics claims.

In summary, this motion to compel (ECF No. 129) is granted
in part and denied in part to the extent set forth above.  The

Clinic shall supplement its responses to Interrogatory Nos. 11 and 18 and Request for Production of Documents No. 6 by December 31, 2020.

## VII. The Clinic's Motion to Compel Production of Third-Party Documents (ECF No. 148)

Relator has served subpoenas on third parties and received documents from them. The Clinic served a request for production of documents on Relator seeking a copy of all communications or other documents between Relator and any non-party which concerns or references the subject matter of the Complaint. The Clinic represents that Relator has not produced all the third-party documents she received in response to the subpoenas. Relator objects to the Clinic's request, asserting the work product privilege. She contends that the request includes informal communications between Relator's counsel and potential third-party witnesses, rather than being restricted to documents obtained pursuant to subpoenas or other requests.[6] While the request for production is broad, the motion to compel focuses on the documents that Relator received in response to Relator's

---

[6] Relator spends several pages of her brief arguing that the Clinic has engaged in *ad hominem* attacks against Relator's counsel by drudging up ancient history from unrelated cases and citing it in a footnote. It is irrelevant what Relator's counsel allegedly did in an unrelated case twenty years ago, and the Court did not review the cases cited in the Clinic's footnote. The lawyers should stick to the facts and issues in this case.

requests.[7]  Relator did not clearly explain why she should not be required to produce documents that she received from third parties if they are responsive to the Clinic's document requests and are not privileged.  The Court finds that any unprivileged documents Relator received from third parties should be produced to the Clinic if they are responsive to the Clinic's document requests and if the Clinic has not already received the documents directly from the third party.  Thus, the Clinic's motion to compel production of these documents (ECF No. 148) is GRANTED.  Relator shall supplement her production of documents by December 31, 2020.

## VIII.   Relator's Motion to Compel Interrogatory Responses (ECF No. 153)

Relator argues that the Clinic did not adequately respond to Interrogatories 3, 4, 5, 6, 8, 9, 10, and 12.  Each of these interrogatories asks the Clinic to identify all documents, communications, and persons with knowledge that supports or refutes the allegations detailed on certain pages of the first amended complaint.  Interrogatory No. 3 seeks information related to Relator's Stark Law allegations on pages 63-75 of the first amended complaint (¶¶ 177-198, alleging schemes related to (1) ancillaries, (2) durable medical equipment, (3) orthotics, (4) ultrasound, and (5) arthrogram injections and

---

[7] In its motion to compel, the Clinic does not appear to argue that it is entitled to attorney work product, such as informal interviews between Relator's counsel and third parties.

fluoroscopies).   Interrogatory  No.  4  seeks  information  related
to  Relator's  kickback  allegations  on  pages  47-57  of  the  first
amended  complaint  (¶¶  123-149,  alleging  schemes  relating  to  (1)
consulting  trips/meals/gifts,  (2)  implant  kickbacks,  (3)  Exos
braces,  (4)  Stryker  equipment  kickbacks,  and  (5)  kickbacks  to
spouses).   Interrogatory  No.  5  seeks  information  on  Relator's
kickback  allegations  on  pages  22-46  of  the  first  amended
complaint  (¶¶  68-122,  alleging  various  problems  with  Ambulatory
Service  Center  referrals,  buy-in,  and  billing).   Interrogatory
No.  6  seeks  information  related  to  Relator's  kickback
allegations  on  pages  58-63  of  the  first  amended  complaint
(¶¶  150-166,  alleging  kickbacks  in  the  purchase  of  medical
practices,  leases,  and  compensation).   Interrogatory  No.  8  seeks
information  on  Relator's  claims  regarding  improper  use  of  code
modifiers  on  pages  79-83  of  the  first  amended  complaint  (¶¶  209-
218,  alleging  improper  addition  of  modifiers  without
justification).   Interrogatory  No.  9  seeks  information  on
Relator's  claims  related  to  durable  medical  equipment  on  pages
83-86  of  the  first  amended  complaint  (¶¶  219-226,  alleging
improprieties  with  the  billing  for  durable  medical  equipment).
Interrogatory  No.  10  seeks  information  on  Relator's  allegations
regarding  physical  therapy  on  pages  86-88  of  the  first  amended
complaint  (¶¶  227-233,  alleging  improprieties  with  certification
and  billing  for  physical  therapy).   Interrogatory  No.  12  seeks

information on Relator's claim that she was retaliated against
for trying to stop the Clinic from making false claims to the
Government on pages 91-93 of the first amended complaint
(¶¶ 243-250, alleging retaliation).

In response to the portion of the interrogatories that
request the identification of persons with knowledge of the
allegations, the Clinic referred to its response to
Interrogatory No. 1, which is a list of people with knowledge of
all the claims. As discussed above, the Clinic supplemented
that list to clarify which employees may have knowledge of the
orthotics allegations, but it does not appear to have done that
for all of the topics referenced in Interrogatory Nos. 3, 4, 5,
6, 8, 9, 10, and 12. The Court is not convinced that the
Clinic's list, contained in the second supplemental amended
responses to Relator's first interrogatories, is sufficient to
answer the requests in Interrogatory Nos. 3, 4, 5, 6, 8, 9, 10,
and 12 for a list of persons with knowledge of the allegations
referenced in each interrogatory. Therefore, the Clinic shall
supplement its responses to Interrogatory Nos. 3, 4, 5, 6, 8, 9,
10, and 12 by December 31, 2020.

In response to Relator's request for the Clinic to identify
documents and communications relevant to the claims addressed in
Interrogatory Nos. 3, 4, 5, 6, 8, 9, 10, and 12, the Clinic
relies on Federal Rule of Civil Procedure 33(d). Again, that

rule permits a responding party to answer by producing business records, "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. r. Civ. P. 33(d)(1).  As discussed above, the Clinic did identify six categories of documents that are generally relevant to all of Relator's claims, but it is not clear from the present record that the Clinic specified the records (or Bates ranges) that must be reviewed to find the information requested in each of the interrogatories.  Rule 33(d) requires that the responding party specify the records that must be reviewed; it does not permit a document dump that leaves Relator to guess where she may find the information requested in her interrogatories. Therefore, if the Clinic has not already provided some type of index to its document production that complies with Rule 33(d), it shall do so by December 31, 2020.

In summary, this motion to compel (ECF No. 153) is GRANTED to the extent set forth above.  The Clinic shall supplement its responses to Interrogatory Nos. 3, 4, 5, 6, 8, 9, 10, and 12 by December 31, 2020.

## IX.  Relator's Motion for Protective Order (ECF No. 160)

Relator represents that the Clinic had not produced any claims data or associated documents for the time period of 2005 to mid-2012.   Therefore, Relator is seeking the claims

information directly from the Centers for Medicare and Medicaid Services ("CMS"). She asked for all claims data from the CMS outpatient, carrier, and DME databases concerning the Clinic, its ambulatory surgery center, and its physicians for the years 2006 through 2012. CMS requires entry of a protective order, payment of costs associated with the data pull, and certification from Defendants that they will not request additional information from the same data pull. The Clinic has declined to agree to the protective order until it can confirm with a CMS employee that the protective order presented by Relator is really required, the scope of the certification that it must make to CMS, and what information Relator requested from CMS. Instead, the Clinic wants to talk directly with the CMS employee who is handling the production.

It is astonishing to the Court that the lawyers could not work out this simple issue. If Relator has correspondence from a CMS employee that lists the requirements for the document production and confirms the scope of the data requested, counsel for Relator shall produce that correspondence to the Clinic. If no such correspondence exists or if Relator declines to produce it and if the Clinic truly deems it necessary to have a CMS employee take the time to verify that the protective order and certification are required, then counsel for Relator shall schedule a conference call or videoconference with the CMS

employee so that Relator's lawyer, one of the Clinic's lawyers, and the CMS employee can briefly discuss the requirements.  The lawyers should agree on an agenda in advance (and provide it to the CMS employee in advance) so that the call does not take more than thirty minutes.  The Court expects that this issue will be resolved and that the parties will submit a joint proposed protective order by December 11, 2020.  The present motion for protective order (ECF No. 160) is terminated.

## X.   Relator's Motion to Stay Deadlines (ECF No. 161)

Fact discovery in this action is supposed to be complete by December 3, 2020.  Expert discovery is to begin on December 7, 2020 and end on April 9, 2021.  It is obvious that the parties need more time to complete discovery.  Relator wants the Court to stay all the deadlines.  In the alternative, she seeks a four-month extension of all deadlines.  Defendants concede that at least a two-month extension is warranted.  The Court finds that a four-month extension is appropriate under the circumstances.  But this is the last extension.  The lawyers should plan accordingly.  The deadlines are:

- ♦ Fact discovery cut-off: Friday, April 2, 2021.

- ♦ Expert discovery period to begin: Monday, April 5, 2021.

- ♦ Deadline to disclose affirmative experts and exchange expert reports: Friday, May 7, 2021.

- ♦ Deadline to depose affirmative experts: Tuesday, June 8, 2021.

♦ Deadline to disclose rebuttal experts: Friday, July 9, 2021.

♦ Expert discovery period cut-off/deadline to complete rebuttal expert depositions: Monday, August 9, 2021.

♦ Deadline to file summary judgment motions: Friday, September 10, 2021. The briefing shall follow the deadlines set forth in the Court's local rules, and the Clerk shall not be authorized to grant extensions.

♦ If no summary judgment motion is filed by the deadline, motions to exclude expert testimony are due by: Friday, October 1, 2021.

♦ If a summary judgment motion is filed, then any motions to exclude expert testimony are due within twenty-one days after the Court's ruling on the last pending summary judgment motion or by the motion in limine deadline set in the notice of pretrial conference, whichever is sooner.

The Court will enter a separate amended scheduling order to ensure that the dates are clear on the docket.

## XI. Defendants' Motion to Compel Interrogatory Responses (ECF No. 162)

Relator claims that Defendants violated the federal Anti-Kickback statute and Stark Law. She alleges general facts regarding what she tallies as eighty-four fraudulent schemes. Defendants served Relator with interrogatories regarding her Anti-Kickback Statute claims, asking Relator to identify each third party from which a specific Defendant solicited or received remuneration in violation of the Anti-Kickback Statute and each third party to which a specific Defendant offered or paid remuneration in violation of the Anti-Kickback Statute.

Defendants also served Relator with interrogatories regarding her Stark Law claims, asking for information on which specific third parties each Defendant made referrals to in a way that violates the Stark Law.

The dispute here concerns timing. Relator acknowledges that she must respond to these interrogatories to explain the factual basis for her claims. Relator, however, contends that she cannot fully respond to these interrogatories until she receives more complete discovery responses from Defendants. But Relator can provide the factual basis for her claims with the information she has now, then supplement her responses after she receives additional discovery responses. Accordingly, Defendants' motion to compel (ECF No. 162) is GRANTED to the following extent: by December 31, 2020, Relator shall supplement her interrogatory responses to provide all the responsive information she has as of that date. She shall supplement her responses by the end of fact discovery.

## XII. Relator's Motion for ESI Protocol (ECF No. 165)

Discovery in this action commenced in March 2019. When the parties submitted their joint proposed scheduling order, they had not worked out a process for production of electronically stored information ("ESI") and stated that they would raise the issue with the Court if the parties, in good faith, could not work out the process themselves. The parties proceeded with

electronic discovery, exchanging search terms, running searches, and working to refine the process. Then, nineteen months after discovery began, Relator filed her motion for an ESI protocol. She contends that ESI is missing from the production because Defendants refused to agree to her proposed ESI protocol, which she says is transparent, iterative, and verifiable. She identifies three main problems with how the parties have proceeded thus far: (1) Defendants have not adequately communicated with her about the ESI collection process, (2) Defendants resisted her requests for an iterative approach to search terms, and (3) Defendants will not agree to her proposed verification process. Defendants respond that they tried to work with Relator to have a cooperative and iterative discovery, but Relator has not cooperated. Defendants further contend that they have already substantially complied with many of the requirements in Relator's proposed protocol.

The Court cannot tell from the present record where the parties disagree. If Defendants substantially complied with many of Relator's proposed requirements, then they must agree that these particular requirements are not unreasonable. And it would be absurd (or unacceptably obstinate) to suggest that Defendants must redo its entire ESI production. The lawyers should be able to work this out. If Relator continues to insist on an ESI protocol, then the lawyers shall confer on the matter

and submit a joint proposed order regarding ESI protocols by December 18, 2020. The proposed order shall state what protocols apply going forward, as well as any action that the parties deem necessary to supplement past ESI productions.[8] The present motion (ECF No. 165) is terminated.

CONCLUSION

As discussed above the Court denies Relator's motion for sanctions (ECF No. 118); denies the Clinic's motion for protective order regarding the subpoena to Doctors Management (ECF No. 122); grants in part and denies in part Relator's motion to compel productions of claims, payments, and medical records (ECF No. 123); denies the Clinic's motion for protective order regarding the subpoena to Wicklow Enterprises (ECF No. 127); grants Relator's motion to compel regarding viscosupplement discovery (ECF No. 128); grants in part and denies in part Relator's motion to compel regarding orthotics (ECF No. 129); grants the Clinic's motion to compel production of third-party documents (ECF No. 148); grants Relator's motion to compel interrogatory responses to Interrogatory Nos. 3, 4, 5, 6, 8, 9, 10, and 12 (ECF No. 153); terminates Relator's motion for protective order (ECF No. 160); grants Relator's motion to amend the deadlines (ECF No. 161); grants Defendants' motion to

---

[8] If the parties cannot agree on particular portions of an ESI protocol, the proposed order shall contain proposed language from each side, as well as a brief statement of reason for the parties' differences.

compel interrogatory responses (ECF No. 162); and terminates Relator's motion for ESI Protocol (ECF No. 165). The Court declines to award sanctions to anyone.

The Court understands that the parties are presently briefing a new motion to compel regarding spoliation discovery (ECF No. 183). Relator contends that the Clinic has not adequately responded to discovery requests regarding documents and devices that have allegedly been destroyed. Instead of spending more time antagonizing each other with court filings, the Court orders the parties to make one more good faith effort to resolve this issue by December 31, 2020. The present motion (ECF No. 183) is terminated. If the issues raised by Relator's motion are not resolved by December 31, 2020, Relator may renew her motion to compel.[9]

Despite Defendants' pessimistic prediction that their most recent motion to compel is likely not the last, the Court is hopeful that the parties will be able to work out all remaining discovery disputes without the Court's intervention. All counsel are well educated and presumably upstanding citizens.

---

[9] Although the Court expects the parties to confer in good faith and reach a solution, the Court notes that if Relator does find it necessary to renew her motion to compel, the renewed motion should focus on the specific categories of documents she believes exist but have not been produced, the specific interrogatory responses that she deems inadequate, and a succinct explanation of why the interrogatory responses are inadequate under the applicable rules. Any response should be similarly focused. Neither side should waste time, energy, or brief pages cataloguing every bad thing opposing counsel has ever done.

They are also seasoned and (to this Court's knowledge) respected members of the bar.   Therefore, they should appreciate that practicing law is a noble profession, a privilege that demands collegiality.   This appreciation requires the removal of the armor for battle to facilitate a recognition of the line between zealous representation and counterproductive contentiousness. That line has become blurred in this litigation, and counsel should use this opportunity to refocus and re-establish it.   If counsel cannot do that themselves, the Court will not hesitate in response to future unnecessary motions to do it for them, sparing no available and appropriate sanction.

IT IS SO ORDERED, this 23rd day of November, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA