IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF GEORGIA, *ex rel.* REBECCA HOCKADAY, | * * |
| Plaintiff-Relator, | * |
| vs. | * CASE NO. 3:15-CV-122 (CDL) |
| ATHENS ORTHOPEDIC CLINIC, P.A., *et al.*, | * |
| Defendants. | * |

O R D E R

Defendants filed a motion for clarification of three issues in the Court's summary judgment order, which was entered on July 19, 2022. *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122 (CDL), 2022 WL 2820103 (M.D. Ga. July 19, 2022).

The first two issues are related. First, the Court granted Relator's summary judgment motion on Athens Orthopedic Clinic, P.A.'s ("AOC") advice-of-counsel defense as to Claim # 17. *Id.* at *14. Second, the Court granted Relator's summary judgment motion on AOC's advice-of-counsel defense as to the claims based on third-party orthotics contracts – Claims # 12, # 13, # 14, #18. *Id.* at *9, *15. The Court understood these claims to be based on bills submitted to the Government while AOC was improperly using a single DMEPOS number for all locations or

improperly billing for orthotics. Defendants now point out that Relator also attempted to raise a related "reverse false claims act" claim based on AOC's failure to reimburse Medicare for the claims that were paid before AOC corrected these billing practices. Although the stated focus of Defendants' present motion is whether AOC may present evidence of its lawyers' advice on any purported reverse false claims act claim based on the DMEPOS number and orthotics billing issues, the heart of the present motion is really whether Claims # 12, # 13, # 14, # 17, and # 18 encompass reverse false claims act claims at this stage in the litigation.

The Court observes that Defendants moved for summary judgment on Claim # 17 to the extent it includes a "reverse false claims act" claim, and Relator did not respond to this argument. Thus, to the extent that Relator asserted a "reverse false claims act" claim as part of Claim # 17, she abandoned it. Moreover, at the summary judgment stage, the Court understood all these claims to be based on requests for money from the Government under 31 U.S.C. § 3729(a)(1)(A) or § 3729(a)(1)(B), not claims under 31 U.S.C. § 3729(a)(1)(G), which creates liability for conduct that results in no payment to the Government when payment is obligated. A claim under § 3729(a)(1)(G) is redundant unless it is independent of affirmative false claims that are actionable under

2

§ 3729(a)(1)(A) and § 3729(a)(1)(B). Here, there is no indication that there are any "reverse false claims act" claims that are independent of the affirmative false claims that were the focus of the parties' briefing at the summary judgment stage. Relator's own description of the claims includes only affirmative false claims, not reverse false claims act claims:

> 12. Defendants violated the False Claims Act and the Anti-Kickback Statute because Defendants submitted claims for reimbursement for orthotic devices where remuneration was exchanged for referrals with Atlanta Prosthetics and Orthotics and/or claims were billed under the wrong NPI (Orthotics—AKS and Misbilling AP&O).
>
> 13. Defendants violated the False Claims Act and the Anti-Kickback Statute because Defendants submitted for payment claims for reimbursement for orthotic devices where remuneration was exchanged for referrals with Athens Orthotics and Prosthetics and/or claims were billed under the wrong NPI (Orthotics—AKS and Misbilling AOP).
>
> 14. Defendants violated the False Claims Act and the Anti-Kickback Statute because Defendants submitted for payment claims for reimbursement for orthotic devices where remuneration was exchanged for referrals with HRJ Custom Orthotics and/or claims were billed under the wrong NPI (Orthotics—AKS and Misbilling HRJ Custom).
>
> 17. Defendants violated the False Claims Act by submitting claims for DME without proper authorization and/or from a location other than where it was dispensed (DME—POS).
>
> 18. Defendants violated the False Claims Act by submitting for payment claims for reimbursement for orthotics furnished by an unlicensed provider and/or billed under the wrong NPI (Orthotics—Licensure).

Pl.'s Mot. for Summ. J. 4-5, ECF No. 340. For all these reasons, the Court concludes that Claims # 12, # 13, # 14, # 17, and # 18 do not encompass "reverse false claims act" claims, and no such claims remain pending for trial. Defendants' request for clarification of the advice-of-counsel issue is thus moot.

The third issue raised by AOC's present motion is whether the reasoning of the Court's decision to grant summary judgment on Claim # 1 (Anti-Kickback Statute claim based on partner physician bonuses) should have extended to Claim # 25 (Stark Law claim based on partner physician bonuses). This is a motion for reconsideration disguised as a motion for clarification, and the answer is no. The Court previously concluded that Relator had not presented enough evidence to demonstrate that the partner physician bonuses varied based on each physician's volume or value of referrals. Thus, the record did not establish that the doctors received kickbacks for their individual referrals, in violation of the Anti-Kickback Statute. The Stark Law addresses slightly different conduct: it prohibits referrals for designated health services if the physician has a prohibited financial relationship with the entity—including an ownership or investment interest. There is no dispute that AOC partner physicians referred Medicare and Medicaid patients to AOC's internal designated health services, and there is no real dispute that the partner physicians shared the profits of the

4

internal ancillary services.  In the Court's view, Claim # 25 is essentially an assertion about the partner physicians' financial relationship with AOC, and the Court's ruling on Claim # 1 does not affect it.  While Claim # 25 may not be a stand-alone claim in the sense that it includes all the elements of a Stark Law claim, it alleges an element of Relator's other Stark Law claims.  For these reasons, the Court denies the motion for reconsideration on this ground.

## CONCLUSION

In summary, Defendants' motion for clarification (ECF No. 439) is moot as to the advice-of-counsel defense on the "reverse false claims act" claims because no such claims remain for trial.  The motion is otherwise denied.

IT IS SO ORDERED, this 15th day of August, 2022.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA