IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* REBECCA HOCKADAY, and STATE OF GEORGIA, *ex rel.* REBECCA HOCKADAY, | * * * | |
| Plaintiff-Relator, | * | |
| vs. | * | CASE NO. 3:15-CV-122 (CDL) |
| ATHENS ORTHOPEDIC CLINIC, P.A., *et al.*, | * * | |
| Defendants. | * | |

O R D E R

After three days of trial, the parties informed the Court that they had reached a settlement of this entire action. Upon the Government's consent to the dismissal of the action pursuant to the settlement, the parties jointly made an oral motion to dismiss the action in open court. The Court ascertained the nature and terms of the settlement pertaining to the qui tam claims and confirmed that the Government, which included both the United States and the State of Georgia, consented to it. The Court further confirmed that there was no objection to the share of the settlement to be received by the Relator as a bounty. The Court found the Relator share provided for in the settlement to be reasonable and authorized under the law. The Court further found that Relator's litigation expenses, including attorneys' fees,

provided for in the settlement for pursuing the qui tam claims were necessary and reasonable and should be awarded in addition to the Relator's qui tam bounty share. Accordingly, the Court orally granted the parties' joint motion to dismiss this entire action pursuant to their settlement. The Court understands that subsequent paper-work may need to be completed among the parties to properly memorialize their agreement, but this action stands dismissed.

*Obiter Dictum*

Although "the system" worked here, this complex, high-stakes litigation strained that system. And the Court finds it appropriate to share a few additional observations, particularly regarding admonishments of counsel that it issued from time to time. The undersigned strongly believes that the practice of law is one of the noblest professions. Being a part of that profession is a privilege and not a right. With that privilege comes certain special responsibilities that do not necessarily apply to all commercial enterprises. Zealous representation of a client must be balanced with candor to the Court. A lawyer not only owes its utmost loyalty to its client as a paying customer, but the lawyer owes candor to the Court as one of its officers. And to the noble profession to which the lawyer belongs, the lawyer owes a duty to maintain the integrity of the system within which the lawyer toils,

which includes engaging with fellow members of the profession appropriately.

I had the privilege many years ago of serving with Judge Duross Fitzpatrick when he was a member of this Court prior to his death.  He saw signs of a lack of civility within the profession long before such notions became trendy and before conferences and law review articles on the subject became widespread.  There was nothing trendy about Duross, at least as related to fundamental principles.  He did not shift with the wind.  He truly believed Atticus Finch should be a role model for all of us.  He practiced law that way and it influenced him after he became a judge.

During Duross's tenure as chief judge of this Court, he felt so strongly about lawyer professionalism that he was instrumental in including "aspirational" standards as a preamble to our local rules.  Those beliefs remain an integral part of our Court's culture today.  In the immediate aftermath of this very contentious case, it is appropriate to be reminded of who we should be as lawyers which is a reflection of how we behave.

"In his or her representation of a client, a lawyer should conduct himself or herself in a manner which, without compromising the interest of his or her client, will facilitate the resolution of disputed matters.  Accordingly, a lawyer should:

1. Maintain open communication with opposing lawyers;
2. Communicate respectfully with other lawyers;

3

   3. Respect the schedule of opposing lawyers and be truthful about his or her own schedule;

   4. Present issues efficiently without unnecessarily burdening opposing lawyers by discovery or otherwise;

   5. Discuss each issue with opposing lawyers in a good faith attempt to resolve it without protracted negotiation or unnecessary litigation;

   6. Be guided by the principle that representations on behalf of his or her client ought to be characterized by good faith and honesty;

   7. Avoid creating unnecessary animosity or contentiousness;

   8. Avoid setting forth allegations against another lawyer unless relevant to the proceeding and well founded; and

   9. Require those under his or her control to comply with these guidelines and encourage clients and others to do likewise."

Middle District of Georgia Local Rules, "Standards of Conduct."

Some may consider these aspirational "standards" quaint relics from a by-gone era. Some may believe that their only obligation is to comply with the letter of the duly enacted rules, statutes and regulations, and that their job is to bend them to the extreme as long as they perceive that doing so benefits their client. Hopefully, most judges (and lawyers) feel otherwise. The undersigned does, which likely became evident during various aspects of this litigation. This bit of *obiter dictum* attempts to explain that.

   IT IS SO ORDERED, this 4th day of November, 2022.

                           s/Clay D. Land
                           CLAY D. LAND
                           U.S. DISTRICT COURT JUDGE